**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert PAYAN, Jr.,**
**Defendant–Appellant.**

**No. 88–2247.**

United States Court of Appeals,
Tenth Circuit.

June 7, 1990.

---

brief), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN and BRORBY, Circuit Judges, and ALLEY, District Judge.*

LOGAN, Circuit Judge.

Robert Payan, Jr. was convicted in the district court on one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). The contraband upon which the conviction was based was discovered in his car following a routine citizenship check by the United States Border Patrol at a temporary checkpoint located on U.S. Highway 70 near Lordsburg, New Mexico. Payan entered a conditional plea of guilty following the district court's denial of his motion to suppress this evidence, and challenges the court's ruling on appeal. He argues that the initial stop of his vehicle was unconstitutional under *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), and that in any event the subsequent search of his car was conducted without consent or probable cause. We disagree and affirm.

## I

Payan's vehicle was stopped at the Lordsburg checkpoint on February 15, 1988, at about 7:00 p.m. for a citizenship check. The checkpoint had been set up that day by United States Border Patrol Agent Joel Ponder. It consisted of a large traffic check van, a pursuit vehicle, portable warning signs, traffic cones, and blinking lights powered by a portable generator in the van. Both vehicles were marked with United States Border Patrol emblems. The checkpoint was operated by uniformed Border Patrol agents whenever manpower resources and weather conditions permitted. All westbound traffic was stopped for citizenship checks. When the checkpoint was not operating, there was no evidence of its existence except for an apron on the side of the highway built as a parking area

Charles Louis Roberts (Robert Ramos with him on the brief), El Paso, Tex., for defendant-appellant.

David N. Williams, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the

---

* The Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation.

for the van. The location of the checkpoint had been chosen by supervisors and not by field agents.

Construing Payan's brief as charitably as possible, he appears to challenge the initial stop of his vehicle on two related grounds. First, he argues that the Lordsburg checkpoint is analogous to a roving border patrol, and that the Fourth Amendment requirement of reasonable suspicion of criminal activity applicable to roving patrol stops, *see Brignoni–Ponce,* 422 U.S. at 881–82, 95 S.Ct. at 2580–81, therefore governs stops at the checkpoint as well. He then appears to argue that before the Border Patrol can rely on *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), which upheld routine traffic stops at fixed checkpoints for brief citizenship inquiries without any reasonable suspicion of criminal activity, it bears the burden of proving that the location and operation of the checkpoint are reasonable. He argues that this showing was not made, and that the district court upheld the government's attempt to preclude inquiry into the reasonableness of the Lordsburg site. We reject both contentions.

■ In *Martinez–Fuerte,* the Court concluded that routine citizenship checks at permanent Border Patrol checkpoints, conducted without any reasonable suspicion that any particular vehicle contains illegal aliens, do not offend the Fourth Amendment. The Court distinguished checkpoint stops from roving patrol stops, which require reasonable suspicion, by citing several ways in which the former are less intrusive to motorists. "[T]he Court emphasized that the procedure in question was routinely and evenly applied to all vehicles; the permanent checkpoint involved little officer discretion and was not likely to result in abusive or harassing stops; and the appearance of authority of the officers manning the checkpoint would allay the concerns of lawful travelers." *United States v. Hernandez,* 739 F.2d 484, 487 (9th Cir.), *cert. denied,* 469 U.S. 1021 & 1042, 105 S.Ct. 441 & 527, 83 L.Ed.2d 366 & 414 (1984) (summarizing *Martinez–Fuerte,* 428 U.S. at 558–59, 96 S.Ct. at 3083–84).

All of the factors stressed by the Court in *Martinez–Fuerte* are present at the Lordsburg checkpoint. Indeed, the only arguably significant distinction between the checkpoints upheld by the Court and the one at Lordsburg is the absence at the latter of a permanent physical structure. But "[p]ermanence of the physical structure is not required." *United States v. Venegas–Sapien,* 762 F.2d 417, 419 (5th Cir.1985). *Accord Hernandez,* 739 F.2d at 488; *United States v. Wilson,* 553 F.2d 896, 897 & n. 4 (5th Cir.1977). Accordingly, the Lordsburg checkpoint is within the holding of *Martinez–Fuerte.*

■ Nor was it necessary for the government to prove the reasonableness of the checkpoint location. While a claim that the location or method of operation of a checkpoint is unreasonable is subject to judicial review, *see id.* 428 U.S. at 559, 96 S.Ct. at 3083, such a claim must be raised by the party challenging the administrative action and, to succeed, must overcome the presumption of regularity that attaches to discretionary agency decisionmaking, *see, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

■ In this case, there is no indication that Payan made any effort to obtain through discovery or otherwise any information bearing on the decision to locate a checkpoint on U.S. 70 near Lordsburg. At the suppression hearing, Payan's counsel asked Agent Ponder during cross-examination whether he knew how many illegal aliens had been apprehended at the Lordsburg checkpoint. The government objected to the question as outside the scope of direct and was sustained by the court. On this slim foundation alone Payan attempts to build his argument that he was "precluded [from] inquir[ing] into the reasonableness of the operation and location of the temporary checkpoint." Brief for Appellant at 22. The argument has no merit. If Payan intended to raise a reasonableness challenge, he should have discovered and presented supporting evidence. He cannot

point to the sustaining of an objection to a question during cross-examination as proof that inquiry was "precluded."

We conclude that the initial stop of Payan did not violate the Fourth Amendment.

## II

■ Payan next argues that the search of his vehicle was unsupported by consent or probable cause. At the suppression hearing, Payan testified that, after asking him some routine questions, Agent Ponder said: "Would you please exit the car and open your trunk." II R. 33. Payan further testified that he interpreted the statement as an order. On cross-examination, Payan acknowledged that the agent in no way threatened him, and that he had opened his trunk without objection or hesitation. Earlier, Agent Ponder had testified that he asked Payan, "would you mind opening the trunk," and that Payan had done so without hesitancy or comment. *Id.* at 10. Agent Ponder's testimony was corroborated by a New Mexico state police officer who witnessed the conversation.

The district court was required to choose between these differing accounts of the events. We cannot say that its ruling was clearly erroneous. *See United States v. Lopez,* 777 F.2d 543, 548 (10th Cir.1985).

AFFIRMED.