930 F.2d 35
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arturo PALACIOS-DEMETRIO, Defendant-Appellant.
and
UNITED STATES of America, Plaintiff-Appellee,
v.
Augustin SOTOMAYOR-PALACIOS, Defendant-Appellant.
 Nos. 90-2057, 90-2058.
 United States Court of Appeals, Tenth Circuit.
 March 1, 1991.
 
 Before LOGAN and JOHN P. MOORE, Circuit Judges, and SPARR, District Judge.*
 ORDER AND JUDGMENT**
 LOGAN, Circuit Judge.
 
 
 1
 Defendants Augustin Sotomayor-Palacios (Sotomayor) and Arturo Palacios-Demetrio (Palacios) appeal their convictions for possession with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). We affirm.
 
 
 2
 Border Patrolman Joseph Ross Muniz and his partner stopped a truck at a United States Border Patrol checkpoint located on a New Mexico highway. Sotomayor was driving the truck and Palacios was his passenger. After asking Sotomayor a few questions, Muniz directed the men to a secondary area of investigation. Sotomayor and Palacios were arrested when Muniz discovered a secret compartment in the bed of the truck containing cocaine. Sotomayor and Palacios filed a joint motion to suppress in which they claimed that the stop and search of the truck were illegal. The district court denied the motion. Sotomayor then pleaded guilty, and Palacios was convicted by a jury. Both now appeal the district court's denial of their motion to suppress and their resulting convictions. Because they raise the same issues on appeal, we address both appeals in this order and judgment.
 
 
 3
 * Defendants argue that "[b]ecause of the temporary nature of the checkpoint, the initial stop was illegal for lack of reasonable suspicion of criminal activity...." Brief of Appellant Palacios at 7; Brief of Appellant Sotomayor at 8. We disagree. The district court correctly concluded that the checkpoint was permanent in nature. See United States v. Payan, 905 F.2d 1376, 1377-78 (10th Cir.1990). As the district court noted, the checkpoint was "established under the direction of a border patrol supervisor in compliance with standard procedures for checkpoints set forth in a border patrol manual." I R. tab 16 at 2-3.[1] Moreover, "For 15 years, the border patrol had operated checkpoints on N.M. highway 26 either at mile marker 8 or mile marker 21...." Id. at 2.[2] Accordingly, the initial stop did not violate the Fourth Amendment. See United States v. Martinez-Fuerte, 428 U.S. 543, 556-64 (1976); Payan, 905 F.2d at 1378-79.
 
 II
 
 4
 Defendants alternatively contend that they were unlawfully detained when they were not allowed to leave the checkpoint after establishing their immigration status. The district court rejected this argument, finding that Muniz' decision to detain defendants did not violate the Fourth Amendment. We review the district court's legal conclusions de novo, and its findings with respect to the underlying historical facts for clear error. See United States v. Bell, 892 F.2d 959, 969 n. 2 (10th Cir.1989) (Ebel, J., concurring in part and dissenting in part), cert. denied, 110 S.Ct. 2618 (1990).
 
 
 5
 We conclude that Muniz' decision to detain defendants was based on specific and articulable facts suggesting that defendants were driving a stolen vehicle. See Terry v. Ohio, 392 U.S. 1, 21 (1968). Patrolman Muniz received a report of a stolen red Chevrolet pickup truck earlier in the day. II R. 65. Although defendants' pickup truck was blue, it was a Chevrolet and it was traveling a route often used by car theives. Id. 65-66. When Muniz asked defendants their destination, they simultaneously offered different answers--Sotomayor said California, Palacios said Phoenix. II R. 46, 67. They then looked nervously at one another before Sotomayor stammered and explained that they planned to stop in Phoenix on the way to California. Id. 68-69. Muniz' suspicions were heightened when defendants informed him that they had come from El Paso because a different highway, Interstate 10, is the most direct route from El Paso to California. Id. 46-47, 69-70. When Muniz attempted to check the license plates he found none. Instead, the truck had a car dealer's "As is" sticker. Id. 47-48. Finally, Sotomayor informed Muniz that the truck belonged to a friend. Id. 48-49. Taken together, these facts justify Muniz' decision to detain defendants long enough to run a stolen vehicle check.
 
 III
 
 6
 Defendants finally argue that their detention, even if justified, exceeded the time necessary to effectuate the purpose of the stop and thus was illegal. Once again, we disagree.
 
 
 7
 Defendants were detained no longer than necessary to effectuate the purpose of the stop. See Florida v. Royer, 460 U.S. 491, 500 (1983) (White, J., plurality opinion). After defendants moved to the secondary investigation area, Muniz detained defendants just long enough to run a stolen vehicle check--approximately five minutes. See II R. 53. Upon ascertaining that the truck had not been reported stolen, Muniz approached the vehicle to inform defendants that they were free to leave. Id. 75. As he approached the vehicle, Muniz noticed a wire hanging beneath the truck. He squatted to look at the wire and noticed that the undercarriage of the truck had been significantly altered. Id. 55-56. He also smelled paint and a body fixture substance known as "bondo." Id. This inspection took approximately thirty seconds. Id. at 58. A secret compartment containing 365 pounds of cocaine was discovered approximately three to five minutes later. Id. at 59, 61.
 
 
 8
 The Fourth Amendment does not require border patrol agents to close their eyes to suspicious circumstances that develop during the stop of a vehicle. United States v. Espinosa, 782 F.2d 888, 891 (10th Cir.1986). When Muniz noticed the dangling wire and the altered undercarriage, and smelled the paint and bondo, the ensuing brief detention of defendants was justified by a specific and articulable suspicion that the truck was carrying contraband. We therefore AFFIRM the district court's denial of defendants' motions to suppress and their resulting convictions.[3]
 
 
 
 *
 The Honorable Daniel B. Sparr, United States District Judge for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 At the suppression hearing, the patrol agent in charge of the checkpoint explained that the checkpoint was established pursuant to the Border Patrol Handbook. See II R. 17. The checkpoint consisted of a United States Border Patrol traffic check van, traffic cones, warning signs, and blinking lights powered by a generator in the van. See id. 19, 22. The checkpoint was operated by United States Border Patrol agents whenever manpower resources permitted. See id. 23. When the checkpoint was open, all westbound traffic was stopped. See id. 31
 
 
 [2]
 The checkpoint had been at one of just three different spots since approximately 1971, being moved once because of safety concerns resulting from highway construction. See II R. 16, 32-33
 
 
 [3]
 Because of our disposition of the merits of this case, we need not address whether Palacios, under Rakas v. Illinois, 439 U.S. 128 (1978), has standing to challenge the stop and search of the vehicle