**UNITED STATES of America, Plaintiff,**

v.

**David M. HERNANDEZ, Defendant.**

**No. 96–40051–01–RDR.**

United States District Court,
D. Kansas.

Oct. 11, 1996.

Homer Delgado, Topeka, KS, Pro Se.

Marilyn M. Trubey, Charles D. Dedmon, Office of Federal Public Defender, Topeka, KS, for David Hernandez Molina.

Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

Defendant is charged with one count of possession with intent to distribute in excess of 500 grams of a mixture containing cocaine. This case is now before the court upon defendant's motion to suppress. The court has heard evidence and argument upon the motion. Part of the evidence in this matter is a videotape of a traffic stop which the court viewed following the hearing upon the motion to suppress. After due consideration, the court shall rule in favor of defendant's motion.

*Factual findings* The court makes the following factual findings in connection with this ruling. On June 30, 1996, defendant was driving a 1987 Honda Accord eastbound on Interstate 70 near Colby, Kansas. The weather was nice. It was not windy. The road was flat, straight and smooth. There was a passenger in the car, Jesus Carbajal, who is not a defendant in this case. Kansas Highway Patrol Trooper J.D. Rule observed

the car drift across the right boundary of the outside driving lane twice within the span of a quarter of a mile. Trooper Rule stated that the car drifted as far as two feet across the line. The car was also moving at an unusually slow, albeit legal, speed—60 mph. Trooper Rule decided to stop the car to check whether the driver was sleepy or impaired and to issue a warning ticket for failure to drive within a single lane. Trooper Rule testified that he stops cars "every day" for failing to drive within a single lane.

When Trooper Rule approached defendant's car, defendant greeted him in Spanish. Trooper Rule asked, "Can I see your driver's license?" and "Do you have your registration with you sir?" Defendant answered "Yeah" and asked Trooper Rule if he spoke Spanish. Trooper Rule said "poquito," which we assume means a little bit. Defendant said he spoke English "little."

While Trooper Rule was running checks on defendant's license and registration, he asked defendant where he was heading. Defendant said he was traveling from El Paso, Texas to Topeka, Kansas to buy cars at a car auction. This conversation occurred after Trooper Rule had directed defendant to sit in the patrol car.

Trooper Rule left the patrol car to ask Mr. Carbajal questions concerning his destination and reason for traveling. Mr. Carbajal's answers were consistent with defendant's answers to the same questions. But, Trooper Rule disbelieved the story, thinking no reasonable person would drive from El Paso to buy cars at a car auction in Topeka, Kansas.

Trooper Rule returned to the patrol car and asked defendant how much money he had. Defendant responded that he had "three hundred dollars maybe" but that his friend in Kansas had five thousand. At that point, Trooper Rule received a radio dispatch which in coded language indicated that defendant had been arrested for possession of marijuana and possession of cocaine. How-

ever, there were no outstanding warrants or other grounds to arrest defendant.

Still in the patrol car, Trooper Rule returned defendant's license to him with a warning ticket and told him "That's all I have for you, you are free to go." This was immediately followed with a request, "Do you mind if I ask you a couple of questions?"

To the court, defendant's response was unintelligible.[1] Trooper Rule repeated his request, "Can I ask you a couple of questions?" Defendant responded "kay," a clipped version of "okay."[2] Then Trooper Rule asked, "Do you have anything illegal in the car?" Defendant responded, "only a towbar and clothes ..." Trooper Rule echoed "some clothes" at the end of defendant's answer. Then he asked, "Will it be alright with you if I search your trunk?" Defendant's response to this question is difficult to discern from the videotape. He may have said "que" in Spanish, which means "what," or he may have said "yeah" in a questioning tone. Whatever the response, it seemed to be in the form of a question. The government contends that defendant said "yeah," or he may have said "kay" as a shortened version of the word "okay." But, the response was not unequivocal. Trooper Rule testified during the hearing upon the motion to suppress that defendant said "Yeah," then acted like he didn't understand. Uncertain of defendant's response or unsure whether defendant understood the question, Trooper Rule repeated his request by stating in a questioning voice, "I can search your car?" Defendant answered, "What?" Trooper Rule repeated, "I can search your car?" Defendant said, "No, I don't know, I don't understand ..." Then Trooper Rule again asked, "OK, can I search your car?" Defendant responded, "Search, what is search?" Trooper Rule followed by stating, "Can you open your trunk and let me in there?" In the middle of this question, it sounds from the videotape that defendant said "Yeah." At that point, defendant exited the patrol car and opened

---

**1.** Defendant's counsel asserts that defendant replied, "Mande?" which is a Spanish word for "excuse me." The court cannot determine if this is what defendant said.

**2.** During the hearing upon the instant motion, Trooper Rule also stated that defendant nodded in response to the request to question him. Defendant cannot be seen in the videotape of this portion of the traffic stop.

the trunk of his vehicle. Thereafter, defendant did not object to or obstruct Trooper Rule's search of the car trunk.

In a brief amount of time, Trooper Rule picked up and opened a duffel bag from the car trunk. In the bag, he discovered the cocaine alleged in the Indictment. Then, he arrested defendant and his passenger.

Approximately seven minutes elapsed from the time defendant's car was stopped to the point when consent to search the car was requested. Throughout the engagement in question, Trooper Rule was polite, friendly and respectful. We commend him for this attitude.

After arresting defendant, Trooper Rule read defendant his *Miranda* rights in English. He asked defendant if he understood. Defendant's response cannot be determined on the videotape. But, Trooper Rule testified that defendant acted like he understood and either said "yes" or shook his head. Defendant was not very responsive to Trooper Rule's questions and stated once more that he didn't speak English and wished to have an interpreter.

Defendant was transported to Colby, Kansas where he was interviewed. Prior to the interview, an interpreter was summoned. The interpreter, Ms. Shirley Faver, is well trained in Spanish and other languages. She speaks Spanish fluently.

Ms. Faver translated the *Miranda* warning into Spanish for defendant. Defendant said he understood and he agreed to help law enforcement officials attempt to find someone in Topeka. Ms. Faver felt that defendant acted voluntarily. She spoke with defendant and assisted with his interview for approximately an hour. Ms. Faver testified that she believed defendant understood more English than he pretended to understand.

Defendant was transported to Topeka where he met a DEA agent, Thomas Walsh. Mr. Walsh read defendant a Spanish version of the *Miranda* warning. Mr. Walsh, who also speaks Spanish, testified that defendant understood his rights and agreed to cooperate.

*Legal findings* The first contention made in defendant's motion to suppress is that defendant's vehicle was illegally stopped. Defendant asserts that drifting into the emergency lane twice within a short distance is not a violation of Kansas traffic statutes. Defendant cites *U.S. v. Gregory*, 79 F.3d 973 (10th Cir.1996) where the court interpreted a similar Utah traffic law and held that an "isolated incident of a vehicle crossing into the emergency lane of a roadway is [not] a violation of Utah law." *Id.* at 978. In *Gregory*, the road was winding, the land was mountainous, and the weather was windy. The patrol officer stopped a U–Haul rental truck after seeing in his rear view mirror that it had crossed two feet into the emergency lane on one occasion. The Tenth Circuit held that this was not sufficient to provide grounds to stop the truck either for a traffic violation or for suspicion of driving while impaired.

The government relies on *U.S. v. Parker*, 72 F.3d 1444 (10th Cir.1995). There, the court concluded in another Utah case that there was adequate grounds to stop a car when the trooper observed it drift twice into the emergency lane for approximately 200 feet. The case does not indicate the type of terrain or wind conditions involved.

The government seeks to distinguish the *Gregory* decision on the grounds that in the case at bar the driver drifted across the line twice and that, unlike *Gregory*, the land and wind conditions provided no excuse for failing to maintain a single lane of travel.

Defendant contends that if we read the traffic statute as broadly as the government desires, then almost everyone will be subject to a traffic stop for innocent reasons.

The traffic statute in question is K.S.A. 8–1522 which states in part:

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

■ The court believes the weather and road conditions distinguish this case from the *Gregory* decision. We further find that, given the weather and road conditions, it was reasonably practicable to drive defendant's car within a single lane at the time the car

was being observed by Trooper Rule. We find that Trooper Rule observed a violation of the Kansas traffic laws and, therefore, had adequate legal cause to stop defendant's vehicle.

■ Defendant's next contention is that Trooper Rule questioned defendant for too long after he determined defendant was not sleepy or impaired. We reject this contention. Good cause existed for making the traffic stop and issuing a warning ticket on the basis of a traffic violation. Under these circumstances, Trooper Rule had the authority to run a check on defendant's license and registration. *U.S. v. McRae,* 81 F.3d 1528, 1534 (10th Cir.1996). When this check was completed and the warning ticket was finished, Trooper Rule returned defendant's license to him and told him he was free to leave. At this point, defendant had been stopped for seven minutes. The court does not believe this amounted to an unreasonable seizure and a violation of the Fourth Amendment.

■ After returning the license, Trooper Rule immediately asked defendant if the trooper could ask a couple of questions. Defendant orally assented to answering questions and also appeared to nod his head. Trooper Rule proceeded to ask questions and defendant attempted to answer them without objection. On this record, we find that defendant consented to being detained for an additional period of time to answer questions.

Defendant's next argument, which we believe is valid, asserts that the government has not proven he consented to the search of his car. Trooper Rule did not have a warrant to search defendant's car. Therefore, he could only conduct a search prior to arresting defendant if defendant consented to the search or if Trooper Rule had probable cause to conduct the search. In this case, the government primarily contends that defendant consented to the search.

■ Before consent may be used as a basis for a search, two standards must be met: "the government must (1) 'proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given' and (2) 'prove that this consent

was given without implied or express duress or coercion.'" *McRae,* 81 F.3d at 1537 (10th Cir.1996) (quoting *United States v. Angulo–Fernandez,* 53 F.3d 1177, 1180 (10th Cir. 1995)). In determining whether the government has met its burden of proof, the court looks at the totality of the circumstances. See *U.S. v. Sanchez,* 89 F.3d 715, 718–19 (10th Cir.1996).

■ The court does not believe there is sufficient clear and positive testimony that an unequivocal and specific consent to search was made by defendant. Trooper Rule asked defendant four times if he could search the car. Defendant's first response was "Yeah?" or "Que?" It is difficult for the court to understand defendant's response, and Trooper Rule testified that he had the same difficulty. Defendant's next three responses to the requests to search were "What," "No, I don't know, I don't understand," and "Search, what is search?" Then, Trooper Rule said, "Can you open your trunk and let me in there?" To the court, this "question" was more in the nature of a directive, such as "Can I see your driver's license?" and "Do you have your registration with you sir?" While these words were phrased in the form of questions, their context suggested that they were commands.

The government contends that defendant responded "yeah" to the first request to search the car. However, Trooper Rule testified that defendant acted like he didn't understand. The trooper also testified that he kept asking whether he could search the car because he was not sure what defendant said. If defendant's response was clearly and unequivocally affirmative, we do not believe the additional requests would have seemed necessary to Trooper Rule.

We note again that defendant appears to say "yeah" in the middle of Trooper Rule's fifth request to search the car: "Can you open the trunk and let me in there?" However, because this is the fifth request to search the trunk, because defendant was obviously showing hesitancy, and because the question was in the nature of a mandate, the court does not believe this is an unequivocal and specific consent to a search of the trunk.

We also point out that defendant was not advised that he could decline the request to open his trunk. While not controlling by itself, this is a factor which the court may consider in making our determination. *U.S. v. Sanchez–Valderuten,* 11 F.3d 985, 990 (10th Cir.1993).

We further acknowledge that in *U.S. v. Payan,* 905 F.2d 1376, 1379 (10th Cir.1990), the Tenth Circuit found sufficient evidence of consent to search when in response to the question "Would you mind opening the trunk," the defendant, without hesitation or objection, did so. In the case at bar, however, there was hesitancy in responding to the request to search. Furthermore, defendant was not asked if he "would mind opening the trunk," which is asking whether the defendant would object. Instead, defendant was asked, "Can you open the trunk and let me in there?" This is more of a command than a request for consent.

The court must look at this matter using an objective reasonableness standard. In other words, the court must ask whether a reasonable officer in this situation would have understood that defendant was consenting to a search of the car's trunk. *U.S. v. Flores,* 48 F.3d 467, 468–69 (10th Cir.) *cert. denied,* —— U.S. ——, 116 S.Ct. 122, 133 L.Ed.2d 72 (1995). We do not question that Trooper Rule believed he could search the car trunk without a vocal objection from defendant. However, we do not believe a reasonable officer would have understood from defendant's words and actions that he had the defendant's unequivocal and specific consent to make the search. This is what the government must prove with clear and positive testimony. The government has failed to present such proof in the opinion of the court.

Finally, we note the issue in this case regarding defendant's grasp of English. The government elicited testimony that defendant's English skills were better than defendant tried to show. Defendant did not testify regarding his ability to speak and understand English. It is clear that Trooper Rule and defendant were able to communicate fairly efficiently for the purposes of the traffic stop. So, one may reasonably conclude that defendant understood more English than he may have professed to understand. However, it is not clear when defendant heard the question "Can you open the trunk and let me in there?" that he understood it as a request for permission as opposed to a command. Defendant may have readily understood that Trooper Rule wanted him to open the car trunk. Defendant may not have understood that opening the trunk was optional rather than mandatory. Thus, it is not clear that defendant freely and intelligently gave consent to search his car.

Furthermore, even if defendant was *pretending* not to understand Trooper Rule's requests to search the car, his evasive, vague or questioning responses are much different from saying specifically and unequivocally "yes" or "yeah" or "okay." Therefore, even assuming that defendant's English skills were better than he pretended, his responses still indicated hesitancy and equivocation— not a specific and unequivocal consent.

■ Without a valid consent or a warrant to search defendant's car, a legal search could only proceed upon probable cause to believe there was evidence of a crime in the car. This was missing. Defendant's arrest record is insufficient to provide probable cause. See *U.S. v. Lee,* 73 F.3d 1034, 1040 (10th Cir.1996); *U.S. v. Sandoval,* 29 F.3d 537, 542 (10th Cir.1994). We also believe defendant's implausible explanation for his trip together with his connection to a so-called "source state" for drugs (Texas) fail to provide sufficient grounds to search the vehicle. Cf., *U.S. v. Guzman,* 864 F.2d 1512, 1520 (10th Cir.1988) (reasonable suspicion for *Terry*-type detention not provided by amount of money—$5,000—carried by self-described "laborer" stopped in New Mexico while allegedly making trip from a source state—Florida—to Las Vegas).

Consequently, the court holds that the search of defendant's car violated the Fourth Amendment and, therefore, the evidence obtained because of that search must be suppressed.

■ Finally, the court believes any statements defendant made to law enforcement

officers after the illegal search of his car must also be suppressed as the byproduct of the illegal search. The Supreme Court has stated:

"Where a Fourth Amendment violation 'taints' the confession, a finding of voluntariness for the purposes of the Fifth Amendment is merely a threshold requirement in determining whether the confession may be admitted in evidence. *Taylor v. Alabama,* [457 U.S. 687, 690, 102 S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1982)]. Beyond this, the prosecution must show a sufficient break in events to undermine the inference that the confession was caused by the Fourth Amendment violation."

*Oregon v. Elstad,* 470 U.S. 298, 306, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985).

A "sufficient break in events" has not been demonstrated to the satisfaction of this court. Courts commonly use factors mentioned in *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975) for determining whether a Fourth Amendment violation has been attenuated by other circumstances or whether evidence must be suppressed as "fruit of the poisonous tree." Using these factors, we conclude that defendant's statements to law enforcement officers must be suppressed.

The statements are temporally close to each other and to the illegal search. There are no significant intervening circumstances other than the administration of the *Miranda* warnings which is insufficient in our opinion to render defendant's statements voluntary. It was the discovery of the cocaine from an illegal search, not the *Miranda* warnings, which led defendant to make incriminating statements. Furthermore, the purpose of the illegal search was to attempt to find contraband which could be used as a basis for criminal prosecution and a lever to obtain further information from defendant. To deter such conduct, statements obtained because of the results of an illegal search should be suppressed.

Because the court believes defendant's oral statements should be suppressed as fruits of the poisonous tree, the court shall not decide the remaining issue in the motion to suppress which challenges the *Miranda* warning given in English by Trooper Rule following defendant's arrest and the subsequent statements made by defendant to law enforcement officers.

*Conclusion* Because the court finds that there has not been sufficient clear and positive proof of an unequivocal and specific consent to search which was freely and intelligently given, or other adequate grounds to support the search of defendant's trunk, defendant's motion to suppress shall be granted.

**IT IS SO ORDERED.**