**UNITED STATES of America,**
**Plaintiff,**

v.

**Cuauhtemoc Pinon HERNANDEZ,**
**Defendant.**

**No. CR. 02–20117–D**

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 16, 2002.

Thomas A. Colthurst, U.S. Attorney's Office, Memphis, TN, for plaintiff.

Jeffrey Jones, Jones Law Firm, Memphis, TN, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

DONALD, District Judge.

Before the court is Defendant's motion to suppress evidence seized as a result of a search of Defendant's vehicle. For the reasons set forth herein, Defendant's motion is granted.

Defendant Cuauhtemoc Pinon Hernandez was arrested on March 29, 2002, and indicted on one count of possession with intent to distribute approximately 1 kilogram of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Hernandez seeks to suppress the methamphetamine found by police officers during the search of the automobile that he was driving. As grounds, Hernandez asserts that he was stopped, interrogated and detained without probable cause or reasonable suspicion of wrongdoing, and the search of the vehicle he was driving was illegal because the police did not have a valid consent to search.

A suppression hearing was held on July 19, 2002. At the hearing, the government called one witness: Officer Michael Anthony McCord of the Memphis Police Department. The defense called two witnesses: Officer Mark Jordan of the Memphis Police Department, and the defendant, Cuauhtemoc Pinon Hernandez, who testified on his own behalf. For the following reasons, the court grants Hernandez' motion.

### FINDINGS OF FACT

Defendant Cuauhtemoc Pinon Hernandez was born in Apatzingán, Michoacán, Mexico, where he had approximately four years of elementary education. Based upon the defendant's testimony, he does not speak or read English, and reads very little Spanish. Prior to this incident, Her-

nandez had been in the United States for less than one year.

On March 29, 2002, at approximately 12:45 p.m., Memphis Police Officers Michael McCord and Mark Jordan observed a car which appeared to be speeding on Interstate 40 in Memphis, Tennessee. Using a radar gun, the officers determined the car was traveling at 70 miles per hour in a 55 miles per hour zone. Hernandez was the driver and sole occupant of the car.

After stopping and approaching the vehicle, Officer McCord asked Hernandez for his driver's license. The officer made the request in English but repeated the request in Spanish after Hernandez indicated that he did not understand English. Hernandez handed Officer McCord a "Texas Department of Identification" identification card which the officer believed to be a forgery. After being asked for another piece of identification, Hernandez handed Officer McCord what appeared to be a Mexican driver's license.

Officer McCord then asked Hernandez for the vehicle registration. Hernandez gave the officer a number of documents including a registration for a car other than the one Hernandez was driving. Ultimately, he gave the officer the correct registration to the car he was driving but the name on the registration was different from Hernandez. When Officer McCord asked who the individual named on the registration was, Hernandez indicated that he did not know. Hernandez also stated that he thought the speed limit was 70 miles per hour. Officer McCord testified that this conversation was in both English and Spanish.

Officer McCord ordered Hernandez out of the car and asked him about his travel plans. Hernandez responded that he was traveling to Nashville to visit friends for a couple of days and that he was coming from Dallas. Officer McCord then asked Hernandez, in English and Spanish, if there were any weapons, drugs, or illegal contraband in the car, to which he replied: "No." Officer McCord testified that he asked if he could search the vehicle for such items and Hernandez consented.

The officers placed the Hernandez in the backseat of the patrol car and called for a computer check on him and the vehicle. Officer McCord filled out a pre-printed Spanish "consent to search" form and handed it to Hernandez for his signature. Officer McCord asked Hernandez if he understood the form. Officer McCord testified that Hernandez said he understood the form; however, Hernandez testified that he told the officer he did not. In either event, Hernandez made a mark on the form.

The officers searched the interior, the trunk area and underneath the hood of the car. The officers discovered bags of methamphetamine hidden in the engine compartment, inside the air filter. Officer Jordan testified that the drugs were discovered within ten minutes of the initial stop. Hernandez was arrested and transported to a police station.

## ANALYSIS

Hernandez moves this Court to suppress the methamphetamine seized during the traffic stop on the grounds that the stopping and detention of the vehicle he was traveling in violated the Fourth Amendment of the United States Constitution because they were not supported by probable cause or reasonable suspicion. Hernandez also asserts that did not freely and voluntarily consent to the search of the vehicle.

### A. The Traffic Stop

■ Hernandez first contends that the police did not have probable cause or reasonable suspicion to stop the car which he

was driving. The United States Supreme Court has held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. nited States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). It is uncontroverted that Hernandez was traveling in excess of the posted speed limit when he was pulled over. Because the police had probable cause to believe a traffic violation had occurred, the police officer's decision to stop Hernandez was therefore reasonable.

### B. The Detention

 The defendant next argues that he was unreasonably detained without probable cause. It is well-settled law in this Circuit that as soon as the purpose of a traffic stop has been accomplished, an officer cannot further detain a vehicle or its occupants unless facts occur which would generate reasonable suspicion to justify a further detention. *United States v. Mesa,* 62 F.3d 159, 162 (6th Cir.1995). Reasonable suspicion must be supported by specific articulable facts. *United States v. Erwin,* 155 F.3d 818, 822 (6th Cir.1998). Because the defendant did not have a valid driver's license; attempted to pass off a seemingly forged identification document as his true identification; did not own the vehicle he was driving; and claimed not to know the name of the true car owner, specific articulable facts to generate reasonable suspicion to justify a further detention were present. Based on these facts, the Court finds that the detention of Hernandez was in fact reasonable.

### C. Consent

Hernandez' next argument asserts that the government has not proven he consented to the search of his car. He contends that the consent he gave to the officers was not voluntarily given and was the product of coercion. The Court agrees in part.

The Sixth Circuit has summarized its analysis for determining the validity of a consent to search as follows:

> A search may be conducted without a warrant if a person with a privacy interest in the item to be searched gives free and voluntary consent. A court will determine whether consent is free and voluntary by examining the totality of the circumstances. It is the Government's burden, by a preponderance of the evidence, to show through "clear and positive testimony" that valid consent was obtained. Several factors should be examined to determine whether consent is valid, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police.

*United States v. Riascos–Suarez,* 73 F.3d 616, 625 (6th Cir.1996) (citations omitted). The government's burden of showing that consent was freely and voluntarily given is heavier where it appears that the suspect is illiterate or a foreigner who does not readily speak and understand English. *Kovach v. United States,* 53 F.2d 639 (6th Cir.1931).

The "totality of the circumstances" test for determining voluntary consent necessitates a highly individualized, fact specific inquiry. In the present case, the most serious challenge to the government's assertion of voluntary consent stems from the fact that Hernandez does not speak English, or at best has only a limited command of English. Several federal courts have been confronted with similar circumstances as presented by the case at bar.

In *Riascos–Suarez*, a Spanish-speaking defendant was stopped and the officers asked for his consent to search his vehicle. 73 F.3d 616, 625 (6th Cir.1996). The defendant responded to the officer's questions in English and did not make any indication that he did not understand the officer's questions. *Id.* The defendant later claimed that he did not understand English well enough to give voluntary consent to a search. *Id.* The Sixth Circuit rejected this argument because the evidence presented at the suppression hearing "overwhelmingly" refuted his claim. *Id.*

Similarly, in *United States v. Navarro*, 90 F.3d 1245 (7th Cir.1996), the Seventh Circuit rejected a Spanish-speaking defendant's argument that his consent was involuntary because he did not have an adequate understanding of English. *Id.* at 1255. The Court noted that the evidence showed that the defendant had spoken English at his workplace for over twenty years, refused the services of an interpreter at his initial interview, and responded appropriately in English to the questions of counsel. *Id.* at 1257.

These cases share the critical fact that evidence was presented by the government which demonstrated that the defendants did have an adequate understanding of English. The present case, however, is distinguishable. The government has not presented sufficient evidence to refute Hernandez' claim that he does not have an adequate understanding of English to give consent. The only evidence presented was the officers' subjective belief that Hernandez understood their questions.

In *United States v. Zapata–Tamallo*, 833 F.3d 25 (2nd Cir.1987), the Spanish-speaking defendant claimed her consent was not voluntary due to her lack of understanding English. The Second Circuit affirmed the denial of her motion to suppress on the basis that the Drug Enforcement Agent who secured her consent had given her a Spanish language consent form which she signed and orally explained her rights to her in Spanish. *See also United States v. Galindo–Hernandez*, 674 F.Supp. 979, 985 (E.D.N.Y.1987) (Spanish-speaking defendant did give an effective consent to search on the basis that the officers had explained his rights to him in Spanish and had the defendant sign a Spanish language consent form).

The government argues that Hernandez was aware of his right to refuse to allow the officers to search his car because he signed the consent form which described his right to refuse the search. However, the officers did not inquire as to whether Hernandez was capable of reading and understanding the consent form. Moreover, the government presented evidence through the testimony of a language expert that the Spanish language consent form contained numerous linguistic mistakes which distorted its content to the point of rendering it nonsensical. The expert also testified that the Spanish language consent form did not allow a reasonable interpretation for all levels of education.

Furthermore, during the suppression hearing, Hernandez' interpreter translated the contents of the Spanish language consent form for the court. Based upon that translation and assuming that Hernandez could have read the form, it is unlikely that he could have understood the Constitutional rights described therein or his right to refuse consent, because the form did not convey those rights. The Spanish version of the consent form was constitutionally deficient with respect to both clarity and content, to say the least.

█ The evidence was that Hernandez had only received approximately five years of formal education. His ability to speak and understand English was extremely

limited. He had only recently arrived in the United States. The proof further revealed that he lacked familiarity with the his rights under the United States Constitution, including his right not to consent to a search of his car. The officers did not tell him that he could refuse to allow them to search. Based on the totality of the circumstances, the court finds that Hernandez did not freely and voluntarily consent to the search of the car because of his lack of understanding of the English language, and because the magnitude of the deficiencies of the Spanish language consent form, were ineffective to adequately apprise Hernandez of his constitutional rights. *See also United States v. Moreno,* 742 F.2d 532 (9th Cir.1984); *United States v. Hernandez,* 944 F.Supp. 847 (D.Kan. 1996); *United States v. Gallego–Zapata,* 630 F.Supp. 665 (D.Mass.1986); *United States v. Restrepo,* 890 F.Supp. 180 (E.D.N.Y.1995); *United States v. Wai Lau,* 215 F.Supp. 684 (S.D.N.Y.1963).

For these reasons, the mark on the form did not provide effective consent by Hernandez to the officers to search his vehicle. Therefore, the search was invalid.

*D. Search Incident to Arrest*

When an officer arrests a person based upon probable cause, the officer may search the person and any area within "immediate control" of the person. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). When the person is arrested in an automobile, the officer may permissibly search the passenger compartment of the automobile and the contents of any containers in the compartment. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and the contents that may conceal the object of the search. *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572, 594 (1982).

 Here, Hernandez' attempt to use a forged identification, lack of a valid United States driver's license, and lack of proper vehicle registration might have been grounds for an arrest, but assuming such an arrest was valid, the search would be limited to the passenger compartment. However, these facts which might have led to such an arrest do not present probable cause to search the engine compartment of the vehicle. The government has not presented any articulable specific facts which show probable cause to support a search of the vehicle beyond the passenger compartment.

## CONCLUSION

For the above reasons, the defendant's Motion to Suppress is GRANTED.