**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 18 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WILLIAM A. KERR,

    Defendant - Appellant.

No. 00-3399
(D.C. No. 00-10070-01-WEB)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **LUCERO**, Circuit Judges.

Defendant-Appellant William A. Kerr entered a conditional guilty plea to possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2, reserving the right to appeal the district court's dismissal of his motion to suppress evidence seized from his automobile. Kerr appeals pursuant to 28 U.S.C. § 1291, and we affirm.

On April 11, 2000, Kansas Highway Patrol Troopers John Rule and Rich

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Jimerson were patrolling I-70 in Ellis County, Kansas. During their patrol they were behind defendant and witnessed the right tires of his vehicle cross over the right solid lane marker of the right-hand lane by approximately one foot, cross back into the lane, and cross over the marker again by approximately one foot. The troopers pulled defendant over, and Rule approached him and asked for his driver's license and registration. Rule told defendant he stopped him because he "was drifting around a little" and asked defendant if he was sleepy. (Appellant's App. at 22.) Defendant replied he was not sleepy and suggested that the wind may have blown his truck around a bit.

Rule and Jimerson first took notice of defendant's vehicle because it had Ontario, Canada, license plates and was an unusual Volkswagen military-type vehicle. Jimerson had never seen such a vehicle and thought it could have been a converted military truck. While Rule talked to defendant, Jimerson examined the bed of the truck and laid on the ground to look at its underside. Jimerson discovered what he believed to be a false compartment. Based on his professional experience, Jimerson knew that false compartments are often used to transport drugs.

Jimerson relayed his suspicions to Rule after they returned to their patrol car, and Rule subsequently returned defendant's license and registration, issued a warning for lane violations, and asked defendant if he was carrying anything

illegal in his truck, a question to which defendant replied no. Rule then asked if he could search the vehicle, and defendant agreed. Defendant exited his truck and showed Rule around.

During the search of defendant's vehicle, Rule discovered marred bolts holding the seat to the floor and concluded that they had recently been removed. Rule also saw a door to the false compartment in the bed of the truck; however, the door was sealed and the troopers did not have the necessary tools to open it. At this time Rule, a trained K-9 handler, retrieved his dog, Kilo, from the patrol car. Rule took Kilo around the vehicle and Kilo became excited, exhibiting behavior indicating that he smelled drugs. The troopers asked defendant to follow them to a nearby service station where they opened the compartment in defendant's vehicle. One hundred fourteen pounds of marijuana were discovered and seized by the troopers, and defendant was arrested.

Defendant moved to suppress the marijuana found by Rule and Jimerson on the grounds that the troopers lacked probable cause to effectuate the traffic stop and that the subsequent detention and search were unreasonable. The district court denied the motion, finding that the troopers had probable cause to think that defendant violated Kan. Stat. Ann. § 8-1522 and that defendant consented to the extension of the traffic stop and the search of his vehicle.

Because the transcript from the motion to suppress hearing had been lost,

the district court determined that the "best available statement of the evidence presented at the [suppression] hearing is [the] statement of facts contained in its Memorandum and Order filed September 20, 2000, together with the exhibits introduced at the hearing, including the videotape of the traffic stop," pursuant to Fed. R. App. P. 10(c). (Appellant's App. at 138–39.)

On appeal defendant claims that the district court erred in denying his motion to suppress and that his due process rights were violated by the district court's decision to submit a statement of the evidence prepared by the court, rather than by the appellant, as a substitute for the lost transcript of the motion to suppress hearing. We consider defendant's contentions in turn.

## I

In reviewing the district court's denial of defendant's motion to suppress, we view the evidence in the light most favorable to the district court's determination and accept the factual findings of the district court unless they are clearly erroneous. United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997). Ultimate determination of reasonableness under the Fourth Amendment is a question of law that we review de novo. Id.

A traffic stop is a "seizure" within the meaning of the Fourth Amendment and we apply the principles of Terry v. Ohio, 392 U.S. 1 (1968), to such stops. Traffic stops are properly analyzed as investigative detentions that must be

supported by a reasonable, articulable suspicion that criminal activity is afoot.

See United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997). Reasonableness of the stop depends on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.

**A**

In order for the initial stop of defendant to be reasonable under the Fourth Amendment, the troopers must have observed a traffic violation or had a reasonable articulable suspicion that defendant violated one of the many applicable traffic and equipment regulations of the jurisdiction. See United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc).

Defendant argues that Rule "did not have probable cause to believe a traffic law had been violated" because Rule only observed him drift one foot over the right solid lane marker twice. (Appellant's Br. at 8.) Defendant contends that he was not drifting on the highway. The district court, on the other hand, concluded that the troopers' testimony on this point was more credible than defendant's testimony. During defendant's cross-examination, he stated that "he had been acutely aware of the troopers' presence behind him on the highway, that the officers' presence made him extremely nervous, and that he frequently checked

the patrol car in his rear-view mirrors." (Appellant's App. at 22 n.1.) The district court found that this testimony lent "credence to the officers' testimony that the defendant crossed the lane marker." (Id.) We accept this factual finding, which is supported by the record, and conclude that the troopers observed a traffic violation, rendering the subsequent stop of defendant reasonable.

In the alternative defendant argues that two instances of drifting do not constitute a violation of Kan. Stat. Ann. § 8-1522(a). That section states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Emphasizing the "as nearly as practicable" language, defendant argues that two instances of drifting do not constitute a violation of this statute. He cites United States v. Ochoa, 4 F. Supp. 2d 1007 (D. Kan. 1998), and United States v. Gregory, 79 F.3d 973 (10th Cir. 1996), in support of this contention. Defendant concedes, however, that these cases both hold that <u>one</u> incident of drifting out of one's lane does not constitute a violation of the applicable state law. In <u>Gregory</u>, the driver was pulled over after the officer witnessed him cross two feet into the right shoulder emergency lane once. We concluded that on the facts in that case "an isolated incident of a vehicle crossing into the emergency lane of a roadway is [not] a violation of Utah law." 79 F.3d at 978. Because the Utah law required that the driver remain in a single

lane "as nearly as practicable," considering that the road was winding, it was windy, and the terrain was mountainous was relevant to the determination. We observed, "under these conditions any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to a suspicion of criminal activity." Id. In Ochoa, the court noted extenuating circumstances existed that contributed to the lane drifting. The district court specifically found that Troopers Rule and Jimerson, the same troopers involved in the present case, "caused or contributed to causing" the driver's single incident of drifting. 4 F. Supp. 2d at 1012 n.4. Such circumstances do not exist in this case.

In this case, the district court found that "[n]othing in the evidence suggests that the conditions on April 11 would have made it impracticable to maintain a single lane." (Appellant's App. at 26 n.3.) Because defendant only asserts that "he might have drifted because he was looking in his mirror at the troopers" but does not contend that anything more than the mere presence of the troopers contributed to his lane drifting, (id.), Ochoa and Gregory are inapplicable.

Rule's and Jimerson's observation of defendant drifting outside of his lane twice within a short span of time constitutes a violation of Kan. Stat. Ann. § 8-1522(a). Therefore the traffic stop was reasonable under the Fourth Amendment.

**B**

Having concluded that the initial stop of defendant was reasonable, we next examine the reasonableness of the subsequent detention and search of defendant's vehicle and person. If a suspect consents to further questioning, a law enforcement officer may extend a traffic detention beyond its initial scope. United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000). A "detention" only occurs when the driver has "objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her way." United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996). A traffic stop can become a consensual encounter "if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." West, 219 F.3d at 1176.

After returning defendant's driver's license and registration, Rule asked defendant if he was carrying anything illegal in his vehicle. Defendant replied no. This interaction was determined by the district court to be non-threatening and friendly, a claim that defendant does not contest.

Based on this record-supported finding, we conclude that Rule's questions regarding the presence of illegal items and his request to search the vehicle took place during a consensual encounter. Thus, continuation of the traffic stop was reasonable under the Fourth Amendment.

Before Rule questioned defendant about the presence of contraband, Jimerson examined the undercarriage of the truck and concluded that there was a hidden compartment that could have been used to store drugs. While this discovery may have prompted Rule to question defendant, Jimerson's visual examination of the undercarriage of defendant's truck did not constitute a "search" within the meaning of the Fourth Amendment. United States v. Gonzalez-Acosta, 989 F.2d 384, 387–88 (10th Cir. 1993). Therefore, we need not determine whether Jimerson had reasonable suspicion for his actions. Id.

## C

Defendant's claim that his consent to search was involuntary is a question of fact that the district court evaluates in view of the totality of the circumstances. West, 219 F.3d at 1177; see also Ohio v. Robinette, 519 U.S. 33, 40 (1996) (stating that "voluntariness is a question of fact to be determined from all the circumstances"). We accept the district court's findings unless they are clearly erroneous. West, 219 F.3d at 1177.

Defendant contends that the government has not met its burden of proving that his consent to search his truck was free and voluntary, and he thus contends that any consent given was the fruit of prior illegal seizures. We disagree on the basis that the government has demonstrated defendant's consent was "unequivocal and specific and freely and intelligently given," without duress or coercion.

United States v. Mendez, 118 F.3d 1426, 1432 (10th Cir. 1997) (quotation omitted).  This conclusion is further supported by defendant having exited his truck and walked Rule around the vehicle after consenting to the search.

Defendant's main argument depends on a determination that defendant was illegally detained at the time he granted Rule consent to search his vehicle; however, we have concluded that the initial traffic stop was reasonable and that the subsequent encounter between Rule and defendant was a consensual encounter, rather than an illegal detention.  Based on these conclusions, defendant was not illegally detained when he consented to the search of his truck.

**III**

Because defendant is alleging that his due process rights were infringed by the district court's failure to use defendant's statement of the evidence and proceedings under Fed. R. App. P. 10(c) we review his claim de novo.  United States v. Thody, 978 F.2d 625, 628 (10th Cir. 1992).  Absent a showing of prejudice from the lack of a complete trial transcript, this Court will not conclude that a due process violation has occurred.  Black v. O'Haver, 567 F.2d 361, 371 (10th Cir. 1977).

Defendant prepared a statement of evidence, under Fed. R. App. P. 10(c), in lieu of the lost transcript of the suppression hearing.  This was objected to by the government on the basis that the district court's statement of facts was the

proper source to rely upon. The district court agreed with the government and determined "that the best available statement of the evidence presented" at the suppression hearing was the statement of facts contained in its September 20, 2000, Memorandum and Order, along with the videotape of the traffic stop. (Appellant's App. at 138.)

Defendant's sole objection is the exclusion of information regarding "the questionable history and credibility of the infamous Troopers Rule and Jimerson," and defendant contends that meaningful appellate review is extinguished by the district court's limitation of the facts considered on appeal. (Appellant's Br. at 20.) However, there are only two differences between the district court's statement of the facts and defendant's submission: In his submission, defendant denies that he committed a traffic offense, and he claims that Rule and Jimerson "had a course of conduct wherein Trooper Rule would simply stop a vehicle he suspected on a hunch and say to the driver, 'Your [sic] drifting around a little bit — you getting sleepy?' This was said in order to obtain a consent to search." (Appellant's App. at 46.) The district court specifically addressed these claims, finding that the troopers' testimony regarding defendant committing a traffic offense was more credible than that of defendant, (id. at 22 n.1.), and that "defendant offered no competent evidence that these officers knowingly stopped other drivers in the absence of probable cause, nor does he cite any credible

evidence that they did so here." (Id.)

In reviewing a motion to suppress, this Court accepts the factual findings of the district court unless they are clearly erroneous. Wood, 106 F.3d at 945. Defendant's proffered evidence regarding Rule's and Jimerson's pattern of behavior was introduced to undermine the troopers' credibility. Credibility is a factual determination, and the record supports the district court's finding that the troopers were credible. Defendant's proffered evidence does not demonstrate that the district court's findings were clearly erroneous. As the district court concluded, it only shows that the troopers "follow a routine," not that defendant did not commit a traffic offense. (Appellant's App. at 22 n.1.) Defendant's statement that he did not commit a traffic offense is similarly subject to a credibility determination, which the district court decided to his detriment. Defendant has not demonstrated that either of these factual determinations are clearly erroneous, which precludes a claim of prejudice on that basis.

Defendant also alleges that he has been prejudiced by a violation of the Court Reporters Act. This act "requires that all proceedings in criminal cases held in open court be recorded verbatim by shorthand or mechanical or electrical means." United States v. Haber, 251 F.3d 881, 889 (10th Cir. 2001) (citing 28 U.S.C. § 753(b)). Before this court will reverse a criminal conviction due to violations of the Court Reporters Act, an appellant must demonstrate specific

prejudice.  <u>Id.</u> at 890.  Based on the above analysis, we conclude defendant was not prejudiced by the district court's use of its statement of the facts.

## IV

The decision of the district court denying defendant's motion to suppress is **AFFIRMED**, and the district court's denial of defendant's motion to approve his statement of the facts under Fed. R. App. P. 10(c) is **AFFIRMED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge