**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Andre C. RHOINEY, Defendant–
Appellant.**

No. 03–3136.

United States Court of Appeals,
Tenth Circuit.

April 5, 2004.

James A. Brown, Asst. U.S. Attorney, Office of the United States Attorney, Topeka, KS, for Plaintiff–Appellee.

Michael M. Jackson, Topeka, KS, for Defendant–Appellant.

Before BRISCOE, McWILLIAMS, and McCONNELL, Circuit Judges.

## ORDER AND JUDGMENT[*]

MICHAEL W. McCONNELL, Circuit Judge.

Andre C. Rhoiney pled guilty conditionally to possession with intent to distribute five grams or more of a mixture containing cocaine base. He now appeals the denial of his motion to suppress evidence obtained during a traffic stop, arguing that the police lacked reasonable suspicion for the stop. He also challenges the district court's finding at sentencing that the drugs he possessed weighed 35 grams. We **AFFIRM** the district court on both issues.

### I.

Following a two-day hearing on Mr. Rhoiney's motion to suppress, the district court entered findings of fact, from which we draw the following summary.

Topeka police officers Bryan Wheeles and Byron Endsley were parked in separate patrol cars in a parking lot on Adams Street at about 2:30 in the morning. Officer Wheeles saw a black Lexus heading south on Adams. Officer Wheeles had taken a report earlier that evening regarding some runaways who reportedly had taken a similar Lexus. He began following the Lexus. He immediately determined that it was not the runaways, because the Lexus he was following had a specialized license plate.

Officer Wheeles then observed the Lexus weaving within its lane. He saw the weaving within the 2700 block of Adams, which was the first block south of the lot where he had been parked. Officer Wheeles also saw the Lexus make an abrupt stop at a red light. He believed that the driver might be under the influence of alcohol or drugs, so he turned on his lights and pulled over the Lexus. At that point, Officer Wheeles recognized the car as belonging to Mr. Rhoiney.

Officer Wheeles waited a moment for Sergeant Endsley to arrive. Both officers then approached the Lexus. Officer Wheeles recognized that the driver was Mr. Rhoiney. Mr. Rhoiney and Officer Wheeles had had some past dealings with one another, and Officer Wheeles believed that Mr. Rhoiney's Kansas driver's license was suspended. As Officer Wheeles was asking Mr. Rhoiney for his driver's license, he smelled alcohol and burnt marijuana. Both Officer Wheeles and Sergeant Endsley saw a marijuana "blunt" (a cigar from which the interior tobacco has been removed and replaced with marijuana) in the car's ashtray.

Officer Wheeles ordered Mr. Rhoiney out of the car and arrested him for possession of marijuana. The officers searched

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Rhoiney's person and discovered a plastic bag containing Ecstasy pills and $700 in cash. They then placed Mr. Rhoiney in Officer Wheeles's car. Sergeant Endsley walked back to Mr. Rhoiney's car to search the interior and discovered a package lying in the road near where Mr. Rhoiney had been standing. The package contained small bags of crack cocaine.

A federal grand jury indicted Mr. Rhoiney in January, 2003, on one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). In April, Mr. Rhoiney moved to suppress all evidence found as a result of the traffic stop on the ground that the officers lacked reasonable suspicion for the stop. After a hearing at which both Officer Wheeles and Sergeant Endsley testified, the district court denied the motion to suppress.

The case was later transferred to a different district judge. The new judge allowed Mr. Rhoiney to reopen the suppression hearing. The court then held a two-day hearing on the motion, at which Officer Wheeles, Sergeant Endsley, an officer from the dispatch service, a police records supervisor, a friend of Mr. Rhoiney, and Mr. Rhoiney himself all testified. Several exhibits were entered into evidence, including a video tape shot from Officer Wheeles's car (which recorded only the events subsequent to Officer Wheeles's turning on his emergency lights), a video tape introduced by the defense showing the topography of the scene, an aerial photographic map of the area, several police reports, and a transcript of the dispatch tape containing the officers' radio communications. Defense counsel cross-examined the officers extensively regarding certain alleged inconsistencies between the officers' testimony at the first suppression hearing and statements on the dispatch tape. Mr. Rhoiney's attorney also questioned the officers' ability to see Mr. Rhoi-

ney's car weaving in the 2700 block because of a hill between that block and the lot where the officers were parked. Defense counsel also pointed out that Officer Wheeles's written summary of the report he had taken regarding the runaways made no mention of a Lexus.

A week after the hearing, the district court entered written findings of fact and conclusions of law denying the suppression motion. The court specifically found the officers' testimony to be credible. The court expressly considered factors relevant to witness credibility, and found that "the testimony of the officers was generally consistent and persuasive. The inconsistencies or omissions in the officers' testimony or their reports noted by the defendant involved insignificant details or innocent errors." R. doc. 110 at 8. Based on the officers' testimony and other evidence, the court found that there was reasonable suspicion for the stop.

Following Mr. Rhoiney's guilty plea, the district court held a sentencing hearing on May 15, 2003. Mr. Rhoiney objected to the presentence report's finding that he possessed 35 grams of cocaine base. He contended that the drugs weighed less than 35 grams and that, as a result, the appropriate offense level was 28 rather than 30. The district court then heard testimony from a DEA forensic chemist. She testified that she first weighed the drugs while still in the bags, then removed the drugs and weighed the bags, and found the net weight of the drugs to be 35 grams. She then conducted various tests on the drugs and then re-weighed them at 32.2 grams. The chemist said that the 2.8 grams had been lost due to testing procedures and evaporation of water weight. Mr. Rhoiney then introduced expert testimony from a retired chemist, who opined that the original weight of the cocaine base must have been less than 35 grams be-

cause the various tests should have result-
ed in a loss of half a gram at most.

The district court found the quantity of
drugs to be 35 grams. The court specifi-
cally found credible the testimony of the
DEA chemist, noting that she was an ex-
perienced chemist and that "her proce-
dures seemed appropriate and reliable."
R. doc. 149 at 5. The court also acknowl-
edged the expertise of Mr. Rhoiney's ex-
pert, but pointed out that he had no actual
knowledge of how much was lost in the
testing process as performed by the DEA
chemist. Given that context, the court
found the testimony of the DEA chemist to
be "more credible." *Id.*

## II.

■ On appeal, Mr. Rhoiney challenges
the factual findings underlying the district
court's conclusion that the officers had rea-
sonable suspicion for the traffic stop. He
contends that Officer Wheeles did not see
his Lexus weaving in the 2700 block of
Adams. According to Mr. Rhoiney, there
is a hill at the intersection of 27th and
Adams which prevented Officer Wheeles
from seeing anything south of 27th until
his car crested the hill. Because Officer
Wheeles was parked about 300 feet north
of 27th and Mr. Rhoiney was traveling
south at 35 miles an hour, Mr. Rhoiney
contends that by the time Officer Wheeles
left the parking lot and crested the hill,
Mr. Rhoiney had long since passed
through the 2700 block and stopped at the
light on 29th.

In addition to his topographical argu-
ment, Mr. Rhoiney maintains that certain
inconsistencies and contradictions under-
mine the officers' testimony and the dis-
trict court clearly erred in crediting it.
The principal inconsistencies Mr. Rhoiney
relies on are: (1) Officer Wheeles testified
that he began following Mr. Rhoiney's
Lexus to see if it contained the runaways,
but the written report submitted by Offi-
cer Wheeles involving the runaways makes
no mention of a Lexus or other vehicle; (2)
Officer Wheeles testified at the first sup-
pression hearing that Sergeant Endsley
decided to provide back-up to Officer
Wheeles when the latter informed him of
his "observations" via the radio, but the
dispatch tape contains no observations by
Officer Wheeles other than a request for
back-up; (3) Officer Wheeles's testimony
at the first suppression hearing was that
he saw the Lexus weaving in the 2700
block but did not recall any weaving in the
2800 block, but at the second suppression
hearing he said he saw the Lexus weaving
in both blocks; and (4) at the suppression
hearing, Officer Wheeles denied that Mr.
Rhoiney's abrupt stop at the 2900 traffic
light was due to the light's changing from
yellow to red, but in his written report
Officer Wheeles wrote that the Lexus
made an abrupt stop when the light
changed.

The government, in response, claims
that Mr. Rhoiney's topographical argu-
ment proves nothing, because there is no
evidence that it was impossible or even
unlikely that Officer Wheeles left the park-
ing lot and accelerated quickly enough to
keep Mr. Rhoiney's car in sight. The gov-
ernment also contends that the officers'
testimony, when analyzed in context, is
consistent and credible on the essential
events surrounding the traffic stop. Ac-
cording to the government, the alleged
omissions and inconsistencies in the offi-
cers' testimony involve tangential details
and, in any event, are the result of ambigu-
ities in questioning or innocent mistakes.

Our review of the district court's factual
findings underlying a denial of a motion to
suppress is deferential. *United States v.
McKissick,* 204 F.3d 1282, 1296 (10th Cir.
2000). We view the evidence in the light
most favorable to the government, and we

accept the district court's factual findings unless they are clearly erroneous. *Id.* A factual finding is clearly erroneous only if it is without factual support in the record or the reviewing court, after reviewing the evidence, is "left with a definite and firm conviction that a mistake has been committed." *United States v. Gilgert,* 314 F.3d 506, 515 (10th Cir.2002). "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *McKissick,* 204 F.3d at 1296.

In light of this standard of review, Mr. Rhoiney's challenge to the district court's findings must fail. All of the district court's findings are supported by record evidence. Mr. Rhoiney does not contend otherwise; his argument is simply that the officers' testimony cannot be believed. But the purported inconsistencies and problems with the officers' testimony that Mr. Rhoiney relies on all go to the credibility of witnesses and the weighing of evidence, which are matters that the law explicitly assigns to the district court. *See Gilgert,* 314 F.3d at 515–16 ("On clear error review, our role is not to re-weigh the evidence"). As the Supreme Court has stated, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Although the inconsistencies Mr. Rhoiney relies on may undermine the credibility of Officer Wheeles's testimony, the district court's contrary conclusion that the inconsistencies or omissions "involved insignificant details or innocent errors," R. doc. 110 at 8, also reflects a permissible view of the evidence. Therefore, having carefully reviewed the record in light of Mr. Rhoiney's contentions about the implausibility of the district court's version of events, we are not "left with a definite and firm conviction that a mistake has been made." *United States v. Patron–Montano,* 223 F.3d 1184, 1188 (10th Cir.2000).

■ In the alternative, Mr. Rhoiney contends that, even accepting the district court's account of the facts, the officers did not have reasonable suspicion to support the traffic stop. He relies on our decision in *United States v. Gregory,* 79 F.3d 973 (10th Cir.1996), for the proposition that a traffic stop purportedly based on reasonable suspicion of the driver's impairment is unreasonable where the only evidence of impairment is minimal weaving within a lane. He also points out that the Court in *Gregory* found it significant that the officer's failure to administer sobriety tests following the stop indicated a lack of genuine suspicion of impairment.

Our decision in *Gregory* is inapplicable here. *Gregory* involved one instance of a driver weaving into the right shoulder emergency lane on a winding, mountainous section of Interstate 70 in windy conditions. The Court carefully distinguished these facts from our en banc decision in *United States v. Botero–Ospina,* 71 F.3d 783 (10th Cir.1995), which held that a single instance of straddling the center lane marker of an interstate highway provided the officer with reasonable suspicion that the driver was impaired. Here, Officer Wheeles testified that he saw Mr. Rhoiney's Lexus straying from its lane five or six separate times, touching both the center line and the right curb line multiple times. Officer Wheeles also saw the car make a "very abrupt stop" at a red light. R. vol. 5 at 7. The officers' failure to administer a field sobriety test does not indicate a lack of suspicion in this case because the officers immediately spotted the marijuana blunt and arrested Mr. Rhoiney on that basis. It follows *a fortio-*

*ri* from *Botero–Ospina* that, under these facts, the traffic stop of Mr. Rhoiney's Lexus was reasonable.

## III.

■ Mr. Rhoiney also challenges the district court's factual finding that the cocaine base attributable to Mr. Rhoiney at sentencing weighed 35 grams. At the sentencing hearing, a DEA lab chemist testified that she initially weighed the cocaine base at 35 grams. She then performed various tests on the drugs and weighed them again. The second, "reserved" weight was 32.2 grams. She accounted for the 2.8 gram difference between the initial weight and the reserved weight by explaining that some amount was consumed in the testing and that some water weight evaporated as the drugs dried out. Mr. Rhoiney offered testimony from an expert chemist who said that no more than half a gram should have been consumed in testing and that therefore the court should find the net weight to be less than 35 grams. Mr. Rhoiney now contends that, in light of his expert's testimony, it was clearly erroneous for the district court to accept the government chemist's conclusion that the drugs weighed 35 grams.

As noted in Part II above, our review of the district court's factual findings is highly deferential. Under that standard, the district court's finding was not clearly erroneous. The finding was amply supported in the record, as the DEA chemist testified extensively about the procedures and equipment she used in weighing and testing the drugs, and she explained how those procedures might cause a 2.8–gram difference between the first and second weighings. Of course, Mr. Rhoiney's expert disagreed with her explanations, but the district court was not required to accept the defense expert's view. The choice between two permissible views of the evidence belongs to the district court, and we see no justification for an appellate court to re-weigh the evidence in this case.

## IV.

For the foregoing reasons, we **AFFIRM** the district court's judgment and sentence.