F I L E D
**United States Court of Appeals
Tenth Circuit**

APR 28 2004

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RUSSELL DALE DUNN,

Defendant-Appellant.

No. 03-5011

D.C. No. 01-CR-125 K

(N.D. Okla.)

## ORDER AND JUDGMENT  *

Before **EBEL**, **MURPHY** and **McCONNELL**, Circuit Judges.  **

Russell Dale Dunn entered a conditional guilty plea to possession of a

firearm following a prior felony conviction, in violation of 18 U.S.C. § 922(g)(1).

He now appeals the denial of his motion to suppress evidence obtained during a

traffic stop, arguing that the police lacked reasonable suspicion for the stop.  Mr.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.

Dunn also challenges the district court's use of two prior Texas burglary convictions to enhance his sentence under the Armed Career Criminals Act (ACCA), 18 U.S.C. § 924(e). We **AFFIRM** the district court on both issues.

I.

On an October evening in 2001, Mr. Dunn was cruising on his motorcycle on a four-lane street in Tulsa. Tulsa Police Officer Kirkland was heading in the opposite direction on the same street in his patrol car. As Mr. Dunn rode past, Officer Kirkland took note of the large "Scorpions" patch on Mr. Dunn's leather motorcycle jacket. The logo made Officer Kirkland curious because he had not seen it before, and he wondered whether it represented a new biker gang in town. He turned his patrol car around and began following Mr. Dunn.

Mr. Dunn was in the far right lane. A car in front of him slowed down to make a right turn. [1] Mr. Dunn rode into the left lane to go around the car. He switched back to the right lane once he was clear of the turning car. Officer

---

[1]Mr. Dunn claims the record shows that the car did not slow down to make a turn but rather inexplicably stopped in the middle of the road before finally turning: "The officer did not say that the turning car had a turn signal on, or describe any clues that indicated the car was going to turn . . ." Appellant's Br. 9. Appellant's brief, however, mischaracterizes the record, as the officer clearly testified that the vehicle slowed down, signaled its intention to turn, and then turned: "[A] vehicle in front of Mr. Dunn slowed, *signaled*, [and] turned right on Oklahoma Street . . . And Mr. Dunn changed lanes to go around that vehicle, as the vehicle was slowing for the turn." R. vol. VI at 67 (emphasis added).

Kirkland noticed that Mr. Dunn did not signal his intention to change lanes. The officer turned on his lights and pulled the motorcycle over.

Mr. Dunn dismounted from his motorcycle. As Officer Kirkland approached, he noticed the clip of a lock-blade knife protruding from the pocket of Mr. Dunn's jeans. Officer Kirkland asked Mr. Dunn whether he was carrying any other weapons. Mr. Dunn responded that he had another knife in a holster on his belt. Officer Kirkland then conducted a pat-down search of Mr. Dunn, during which he felt the outline of a handgun underneath Mr. Dunn's jacket. Officer Kirkland and a back-up officer then handcuffed Mr. Dunn and removed the handgun and knives from his person.

A federal grand jury indicted Mr. Dunn on one count of Possession of a Firearm and Ammunition after Former Conviction of a Felony, in violation of 18 U.S.C. § 922(g)(1). The government also alleged that Mr. Dunn's conduct was in violation of the Armed Career Criminals Act, 18 U.S.C. § 924(e), and that he was eligible for the enhanced penalties provided for in that Act.

Mr. Dunn then filed a motion to suppress evidence obtained as a result of the traffic stop. He contended that the traffic stop was not justified at its inception because, in his view, the officer was not in position to see any traffic violation but had instead stopped Mr. Dunn solely because he suspected him of belonging to a motorcycle gang. Mr. Dunn also contended that the officer's pat-

down search and questions about weapons went beyond the permissible scope of the stop.

Following a hearing, the district court entered a written order denying the motion to suppress. The court found that Officer Kirkland was only thirty yards behind the motorcycle when Mr. Dunn changed lanes. The district court also found that the officer's sole reason for turning around and following Mr. Dunn was because of his interest in the origins of the "Scorpions" patch on Mr. Dunn's jacket. The district court was troubled by the officer's apparent practice of biker profiling, calling it "a parody of appropriate law enforcement." R. doc. 13 at 5. Nevertheless, the court recognized that, under Tenth Circuit and Supreme Court precedent, the sole inquiry in analyzing the reasonableness of a traffic stop is whether the particular officer had reasonable suspicion that the particular motorist had violated any one of the multitude of applicable traffic regulations and that any other subjective motivations the officer may have had are irrelevant. The court held that the traffic stop was justified under that standard. The district court also rejected Mr. Dunn's argument that the pat-down exceeded the scope of the stop, holding that the officer had a reasonable belief that Mr. Dunn was armed and dangerous.

Mr. Dunn then pled guilty to the indictment but reserved his right to appeal the denial of his suppression motion. Five months later, Mr. Dunn moved to

reopen the suppression hearing, primarily to present his version of the events. The district court granted the motion, and an additional hearing was held at which Mr. Dunn and Officer Kirkland testified. Mr. Dunn denied that he had changed lanes without signaling, claiming instead that he had swerved within his lane when a car suddenly pulled out in front of him. He also claimed that Officer Kirkland could not have seen the knife protruding from his pocket because of his black clothing. Officer Kirkland testified as he had at the first hearing, namely, that he saw Mr. Dunn execute a routine lane change without signaling and that he saw the knife clip outside of Mr. Dunn's pocket. The district court again denied the suppression motion, stating that it was persuaded by Officer Kirkland's testimony that he was able to see the knife, particularly in light of photographs introduced by the government showing that Mr. Dunn's jeans were blue, not black as Mr. Dunn had testified.

At sentencing, the government argued that Mr. Dunn was subject to a mandatory minimum 15-year sentence under the ACCA, based on two prior burglary convictions and a conviction for conspiracy to manufacture methamphetamine. Mr. Dunn objected to the use of the burglary convictions, arguing that the Texas burglary statute under which he was convicted did not satisfy the ACCA's definition of "burglary." The district court overruled the objection and sentenced Mr. Dunn to a prison term of 180 months.

II.

On appeal, Mr. Dunn has abandoned his biker profiling and unjustified pat-down search arguments. He now concedes for purposes of appeal that Officer Kirkland saw him move into the left lane without signaling; but he argues that this movement was not a violation of the relevant Oklahoma traffic law. He contends that the Oklahoma statute does not require signaling a lane change when it would be impracticable to do so. Because the decelerating car in front of Mr. Dunn forced him to switch briefly to the left lane to get around it, Mr. Dunn insists it would not have been practicable for him to signal his intention to change lanes at least 100 feet before doing so as required by the statute.[2] Thus, according to Mr. Dunn, a traffic stop is not justified when road or traffic conditions necessitate this kind of brief foray into the adjoining lane. For this proposition, Mr. Dunn relies heavily on *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996), where we held that one instance of a driver weaving into the right shoulder emergency lane on a winding, mountainous section of Interstate 70 in windy conditions did not violate a Utah statute requiring a vehicle to remain within a single lane.

---

[2]Okla. Stat. tit. 47, § 11-309(1) requires that "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety and then given a signal, not less than the last one hundred (100) feet traveled by the vehicle, of his intention to change lanes."

The government contends that Mr. Dunn failed to raise this issue in district court. The government is correct that Mr. Dunn's legal theory on appeal is different from the one offered in district court. Below, Mr. Dunn urged the district court to suppress the evidence on the basis of the officer's improper subjective motives. Mr. Dunn also offered his own version of the facts, in which he denied that he changed lanes at all. But he did not argue, as he does now on appeal, that even according to the officer's account of the facts, his actions did not constitute a violation of the applicable Oklahoma traffic regulation. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

Mr. Dunn claims that the following arguments and citations in his motion to suppress were sufficiently specific to preserve the issue:

> Routine traffic stops are governed for Fourth Amendment purposes by the strictures of *Terry v. Ohio*, 392 U.S. 1, (1968) . . . *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996). A stop must be justified at the inception, and the scope of the officer's actions during the stop must be reasonably related to the circumstances justifying the interference. *Id*.
>
> In the present case, counsel for the Defendant cannot determine whether Officer Kirkland's vehicle was in a position to allow him to actually observe the alleged illegal lane change or whether Officer Kirkland simply stopped the Defendant based upon the assumption that he was a motorcycle gang member. Therefore, the first prong of the above test is failed, and the evidence and statements gained in result must be suppressed from evidence. *Gregory*, *supra*; *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994).

R. doc. 10 at 2. Mr. Dunn argues that his enunciation of the *Terry* test and his citation to *Gregory* were sufficient to allow the district court to address the argument that the lane change, as described by the officer, was not a violation of the Oklahoma statute. We disagree. The motion simply does not contain the relevant argument. Moreover, the motion cites *Gregory* not for any arguments regarding what kinds of lane changes violate traffic regulations but for the general propositions that traffic stops are analyzed under *Terry* and that evidence obtained in violation of the *Terry* test must be suppressed. Such citations are too vague to preserve an issue for appeal. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) (vague, arguable references to an argument in the district court proceedings do not preserve the issue on appeal).

We are particularly reluctant to consider new arguments on appeal when the failure to raise them below has resulted in inadequate factual findings by the trial court. *United States v. Abdenbi*, 361 F.3d 1282, 1290 (10th Cir. 2004). Here, the district court conscientiously made specific factual findings regarding the issues that Mr. Dunn raised. However, the court understandably did not make specific findings about the length and duration of Mr. Dunn's detour into the left lane, nor did it specifically address whether it was practicable for Mr. Dunn to have signaled his intention to change lanes. Mr. Dunn's argument on appeal

depends on the resolution of those factual issues, and, given the inadequacy of the findings below, we decline to consider this issue for the first time on appeal.

III.

The district court sentenced Mr. Dunn as an Armed Career Criminal under the ACCA. The ACCA imposes a fifteen year mandatory minimum sentence for a defendant convicted of being a felon in possession of a firearm who has three previous convictions for a violent felony or a serious drug offense. 18 U.S.C. § 924(e)(1). The ACCA specifically defines "violent felony" to include "burglary." 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court has interpreted "burglary" in the ACCA to mean the "generic, contemporary meaning of burglary" which "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990) (citation omitted).

Mr. Dunn argues that the Texas burglary statute which he was convicted of violating does not fall under the *Taylor* definition because it allows conviction if a person enters a building and "commits or attempts to commit a felony or theft." Tex. Penal Code § 30.02(a)(3) (1992). Mr. Dunn contends that this provision lacks the coincidence of unprivileged entry and intent to commit a crime required by *Taylor*. However, this Court has squarely held that the elements of the Texas statute at issue "substantially correspond to the generic elements of burglary

contained in *Taylor* ." *United States v. Spring* , 80 F.3d 1450, 1462 (10th Cir. 1996). Mr. Dunn acknowledges that *Spring* is controlling authority, but he raises the issue only to preserve it for *en banc* review. We are, of course, bound by circuit precedent.

For the foregoing reasons, we **AFFIRM** the district court's denial of the motion to suppress, as well as its judgment and sentence.

Entered for the Court

Michael W. McConnell
Circuit Judge
